ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Thursday, September 23, 2021 11:36:19 AM
CASE NUMBER: 2021 CV 03935 Docket ID: 35768018
MIKE FOLEY
CLERK OF COURTS MONTGOMERY COUNTY OHIO

09292021

IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO
CIVIL DIVISION

| | |
|---|---|
| **Lauren M. Diers**<br>**3946 Oak Creek Dr.**<br>**Dayton, OH 45440**<br><br>Plaintiff<br><br>v.<br><br>**State Farm Mutual Automobile**<br>**Insurance Company**<br>**One State Farm Plaza**<br>**Bloomington, IL 61710** | Case No.:<br><br>Judge<br><br>**COMPLAINT FOR PERSONAL INJURIES AND INSURANCE BAD FAITH WITH JURY DEMAND ENDORSED HEREIN** |

## FIRST CLAIM FOR RELIEF

1. Plaintiff, Lauren M. Diers (hereinafter "Plaintiff") is a resident citizen of Montgomery County, Ohio.

2. Defendant State Farm Mutual Automobile Insurance Company (hereinafter "Defendant") is a for profit corporation authorized to do the business of insurance within the County of Montgomery, State of Ohio.

3. On May 6, 2019, Plaintiff, Lauren M. Diers was injured in an automobile collision that occurred when another driver, Luis Avina, pulled from a stop sign directly into the path of the vehicle driven by Lauren and resulting in a substantion head-on impact.

4. The actions of Luis Avina were negligent and the sole proximate cause of the subject collision.

5. As a result of the impact, Plaintiff suffered injury to her left wrist, neck, eye, nose and lip with pain and suffering and impact on her quality of life, ongoing physical pain and anxiety

Exhibit A

while driving, need a left wrist brace, multiple sessions of physical therapy, injection into the left wrest, surgery on her left wrist, and an ongoing need for medications for her physical pain.

6. At the time of the wreck, Luis Avina was insured by Geico with automobile liability insurance coverage with limits of $25,000.

7. Plaintiff was insured by Defendant, State Farm Mutual Automobile Insurance Company with a policy of insurance providing underinsured motorist coverage with a per-person limit of $100,000.

8. Plaintiff was insured by Defendant, State Farm Mutual Automobile Insurance Company with a policy of insurance providing medical payments coverage with a limit of $25,000.

9. Plaintiff made a claim for medical payments benefits and underinsured motorist coverage benefits pursuant to Defendant's policy of insurance, has fully cooperated with the Defendant and complied with all applicable terms and conditions of Defendant's automobile policy of insurance.

10. Defendant was first notified of the subject collision, injuries suffered by the Plaintiff, Plaintiff's medical payments claim and uninsured/underinsured motorist claim shortly following the subject collision.

11. By correspondence on July 31, 2019(hereto attached as Exhibit A), Plaintiff through counsel sent correspondence to Defendant advising of the Plaintiff's desire to access her medical payment benefits and her underinsured motorist benefits and requesting that State Farm provide the following:
    1) Claim note with regard to the initial notice of the claim and conversations with the client;
    2) Bills and records you [State Farm] have obtained with regard to treatment my client has received;
    3) Photographs with respect to property damage; and
    4) Any records statements that have been taken.
This correspondence is attached as Exhibit 1.

12. By correspondence on July 31, 2019, Plaintiff through counsel also encouraged State Farm adjuster that was tasked with the responsibility to investigate and evaluate Plaintiff's underinsured motorist claim to take a statement or statements from the Plaintiff, State Farm's insured to better appreciate the injuries that she sustained, her pain and suffering and the impact teh injuries had upon her quality of life.

13. State Farm sent no responsive correspondence, no information as requested by Plaintff through counsel and made no attempt to speak with Plaintiff over the next 30 days.

14. On August 20, 2019, State Farm advised Plaintiff that the company had processed and paid for a left wrist brace that Plaintiff had obtained as a result of the injury she suffered to her left wrist. However, State Farm failed, neglected or refused to provide any bills or records as requested, notes with regard to the Plaintiff's first notice of loss and conversations with her before she was represented, photographs or recorded statements.

15. By correspondence on August 30, 2019 hereto attached as Exhibit B, Plaintiff through counsel asked for a response to the July 31, 2019 correspondence.

16. State Farm never responded to Plaintiffs request and never provided any claims notes with regard to the intial notice of loss made to State Farm by the Plaintiff, never provided bills or records gathered or received by State Farm before July 31, 2019, never provided photographs and never provided any recorded statements.

17. On October 11, 2019, State Farm provided Plaintiff with a payment ledger to show that Defendant had received and paid the hospital and radiology bills for treatment that the Plaintiff had received on the day of the wreck, May 6, 2019, at the emergency room where she received x-rays for injury to the left hand and wrist and CT scns of the face. State Farm correspondence further said that they had received no bills for processing within the previous 30 days and would close the medical payments claim if no further bills were sent for processing.

18. On October 15, 2019, Plaintiff sent further bills associated with the emergency transport from the scene to the emergency room, a bill for the evaluation and care in the emergency room by the emergency room physician and a bill for the initial treatment with her family doctor on May14, 2019 for ongoing left wrist and hand pain.

19. Plaintiff continued to suffer from left hand and wrist pain and underwent physical therapy for her left wrist with with treatments through Kettering Health Network on December 17 and December 20, 2019. Bills for this treatment were provided to State Farm for processing and payment pursuant to her medical payments coverage.

20. On February 7, 2020, Plaintiff came under the care of an orthopedic specialist upon referral from her family doctor for her ongoing wrist pain. This specialist at Orthopedic Associates of Southwest Ohio noted the Plaintiff to have had ongoing left wrist pain since May 2019, the date of the accident, with x-ray in the emergency room immediately following the collision, treatment with ice, heat, the wrist brace and formal therapy.

21. On February 13, 2020, Plaintiff had repeat x-rays and an MRI of her wrist ordered by her orthopedic specialist.

22. On February 18, 2020, Plaintiff received an injection in the wrist to treat the ongoing wrist pain.

23. On April 21, 2020, Plaintiff discussed surgery with her orthopedic specialist who diagnosed Plaintiff to have sustained a complex tear of the triangular fibrocartilage of the left wrist and she underwent surgery on June 12, 2020 at Southview Hospital.

24. After surgery, Plaintiff underwent more physical therapy from August 6, 2020 though Ocotber 2, 2020.

25. On June 16, 2020, Plaintiff provided State Farm with medical bills that had been incurred up to that date for processing pursuant to Plaintiff's medical payments coverage.

26. On or about July 22, 2020, State Farm denied payment of the hospital bill in the amount of $19,620.04 for Plaintiff's wrist surgery stating that the supporting documentation was required.

27. March 26, 2021, Defendant was given a complete package of Plaintiff's medical records which reflect as follows:
    1. May 6, 2019 - Emergency room care noting the head-on type collision for the Plaintiff with airbag deployment, facial trauma, right eye contusion, blurred vision, headache, nasal pain, upper lip pain, and left hand pain
    2. May 14, 2019 - Office visit with Plaintiff's primary care provider who noted facial bruising, laceration above the right eye, ongoing left wrist pain that made it difficult to hold her two-month old baby. The physician provided medication, recomneded use of a left wrist brace and gave Plaintiff exercises.

3. December 6, 2019 - Office visit with Plaintiff's primary care provider with the note that the Plaintiff was having ongoing discomfort with the left wrsit, had been doing therapy and that she needed a referral for additional therapy.

4. December 17 and 20, 2019 - Therapy records with respect further treatment of the left wrist and records that contain the history of the motor vehicle collision in May 2019 as the cause of the left wrist injury and a note that the injury had been exacerbated by the Plaintiff's need to provide full time child care to her infacnt. A further history is recorded that she had received several weeks of prior therapy at a hand center at Mercy Health with only temporary relief and the hope to get therapy closer to home in Centerville Ohio.

5. February 7, 2020 through July 2020 - Records from Orthopeidc Associates showing ongoing pain and treatment related to the wrist injury that was reported to have occurred in May 2019, the date of the subject collision, an injection into the left wrist and discussion of the orthopedist's opinion that Plaintiff suffered a tear in the triangular fibrocartilage of the left wrist as a result of the collision.

6. February 13, 2020, MRI report reflecting the history of left wrist pain as a result of the collision on May 6, 2019 but also including a billing code .8XXA corresponding with injury from a power tool.

7. Surgical records from the surgery of June 12, 2020 confirming the diagnosis of a tear in triangular fibrocartilage and also identifying a partial tear of the scapholunate ligament.

8. Therapy records from August 6, 2020 through October 2, 2020 reflecting both the post-operative pain and restrictions in Plaintiff's range of motion, the impact the wrist pain had on Plaintiff's activities of daily living and that the injury and pain was a result of the substantial collision of May 20, 2019.

9. Medical bills in excess of $46,500.00.

28. On March 26, 2021 Geico made an offer of $25,000.00, the policy limits available to the at fault driver, in exchange for a full release of the at fault driver by the Plaintiff for his liability in causing the subject collision.

29. On April 5, 2021, State Farm again denied payment of the surgery bill still stating that "supporting documentation was required".

30. April 9, 2021, State Farm gave Plaintiff permission to accept the $25,000 insurance policy limit offered by the at-fault driver's liability carrier and acknowledged Plaintiff's righto proceed with her underinsured motorist claim.

31. The insurance carrier for the at fault party then issued payment of the available $25,000 but issued payment in the approximate amount of $19,500 to Plaintiff and $5500 to Defendant State Farm to reimburse Defendant State Farm for the minimal payments made by State Farm pursuant to Plaintif's medical payments coverage.

32. As a matter of law, Defendant State Farm is not entitled to recover its subrogated interest from the limited liability money available to the at-fault driver until Plainttiff herself is fully compensated and made whole.

33. Several correspondences and calls were then sent and made by Plaintiff to Defendant requesting that Defendant refund payment to the Plaintiff of the $5,500 that State Farm wrongfully received from the at-fault driver's liability insurance proceeds, that State Farm speak to Plaintiff to understand what she had gone through, how the injuries had impacted Plaintiff's quality of life, that State Farm pay the remaining available medical payments benefits and that State Farm pay the $75,000 in available underinsured motorist benefits to the Plaintiff under her policy.

34. On or about May 20, 2020, State Farm medical payments adjuster advised that no further payment for medical expense would not be made because bill coding on a radiology bill for x-rays and MRI was a numerical code which correlated with "injury sustained with a hand powered tool."

35. At about this same time, State Farm adjuster tasked with evaluating the underinsured motorist claim denied any payment pursuant to the underinsured motorist coverage with the justification that only the treatment in the emergency room and initial care by the primary

care provider were related to the wreck, that further treatment was unrelated and Plaintiff was fully compensated with the $19,500 received by the Plaintiff from the at-fault driver.

36. On May 24, 2020, Plaintiff through counsel reiterated that the basis of State Farms denial of payment pursuant to Plaiintiff's medical payments coverage, the radiology bill noting an injury with a power tool, was factually inaccurate and an inaccuracy that could be cleared up by talking to Lauren Diers, a bill code that was inconsistent with another unmentioned notation on the same radiology bill that the injury occurred in the crash of May 6, 2019 and a notation as to cause that was inconsistent with ALL of the medical records provided in the medical package to State Farm on March 29, 2021. This correspondence is attached as Exhibit 2.

37. On June 4, 2021(hereto attached as Exhibit C), without any response from State Farm, Plaintiff through counsel again sent correspondence to State Farm to follow up on the status of either State Farm's review of the records and bills to confirm the that the injury and surgery to the left wrist were a result of the wreck or to set up a time to speak with Lauren Diers to resolve any questions and understand what Lauren had gone through in terms of her injury, pain, suffering and impact on her quality of life.

38. On July 2, 2021, State Farm sent correspondence without reference to medical records that all support that the wrist injury was a result of the subject wreck, without reference to the billing code that resulted in the erroneous reference to a power tool incident or the reference in the same bills that the injury was caused by the collision of May 6, 2019 and without any attempt to speak with Lauren Diers but now indicating that "we have information showing that the surgery is directly related to another injury suffered by Mrs. Diers on or after 2/13/20."

39. On July 31, 2019, Plaintiff through council addressed in detail the notations in the medical records of care which all reflect that the Plaintiff's wrist injury was incurred in the subject collision, the need for surgery was a result of injury sustained in the subject wreck and that the only inconsistency which was clearly in error occurred with the use of a billing code .8XXA that correlates with a "power tool" injury. The correspondence goes on to advise that the denial of medical payment benefits and underinsured motorist benefits was in bad faith. This correspondence is attached as Exhibit 3.

40. Finally, on September 1, 2021, Plaintiff through counsel contacted State Farm and spoke with a new adjuster assigned to handle the underinsured motorist claim. This adjuster advised first that the Plaintiff did not exhaust the underlying limits since Plaintiff accepted $19,500 of the available $25,000.00.

41. This adjuster was then told that indeed the $25,000 was exhausted, State Farm had given permission in writing to the Plaintiff to accept that policy limtis offer, that State Farm had wrongfully gotten $5,500 of the liability limits and refused to disgorge the money to the Plaintiff.

42. This adjuster then advised that it appeared that the bills were related to an incident with a power tool and therefore not considered in the underinsured motorist evaluation.

43. This adjuster then advised that the correspondence of July 31 was in the file and it did nto appear as though State Farm adjusters had reviewed the medical records to confirm the accuracy of the correspondence, that she was surprised by the inaction of adjusters handling the underinsured motorist claim to independently review what appeared to be a mistake made by the medical payments adjuster, that she had no control over the medical payments adjuster but she would ensure that she look at the records to confirm that there was a wrist injury noted in the initial records of care following the wreck and that the records did not reflect any subsequestn injury, that she would do an independent review immediately and meet with her manager.

44. This adjuster then advise that there was also a note with regard to a denial based upon another automobile collision that is referenced to have occurred in February and resulting in a wrist injury and medical treatment.

45. This adjuster was then advised that the Feburary accident was a minor parking lot incident with no injury, no treatment. The adjuster would not discuss what information she relied upon to make the contrary representation.

46. This adjuster was then asked to please speak with the insured, Lauren Diers to clear up any misinformation with regard to other injury to her left wrist and to learn how profoundly the wrist injuries suffered in this wreck had impacted her.

47. As opposed to speaking with her insured, this adjuster advised that she would carefully note the extensive limitations and problems suffered by her insured as a direct result of the subject collision.

48. This most recent State Farm adjuster, assured that she would immediately get with her manager with all of the information and respond to Plaintiff's underinsured motorist claim within a week or two at the very most.

49. As of Septemeber 20, 2021, State Farm has never responded, made no further payment of benefits under either the medical paymants coverage, the underinsured motorist coverage, sought a statement from its insured or even advised as to the status of their review if indeed there ever was an effort to review all of the information provided.

50. State Farm has a duty of good faith to fully and fairly investigate claims, objectively evaluate claim and resolve claims made for medical payment benefits and underinsured motorist benefits in a timely fashion.

51. State Farm breached its duty of good faith and acted in eggegious bad faith in failing to do a full and fair investigation which clearly would involve talking with its own insured, Lauren Diers, and/or her husband, responding to the numerous correspondences and calls made by and on behalf of the insured, carefully reviewing the medical records of care that identify the subject collision as the cause of Lauren's wrist injury and need for surgery and failing to investigate in any way the erroneous claim thatLauren was injured in a different car accident or while using a power tool in her non-dominant hand when she was a new mother and having difficulty trying to care for an infant child with a wrist injury sustained in the subject wreck.

52. State Farm breached its duty to fairly and objectively evaluate the subject case in failing to evaluate the medical information provided to them and instead looking for a speculative or erroneous basis upon which to deny Plaintiff's medical payments claim and underinsured motorist claim, and in failing to ever evaluate their insured's pain and suffering and the impact that the injuries she suffered had on her quality of life.

53. State Farm breached its duty to pay benefits it was obligated to pay to the Plaintiff pursuant to her policy of insurance in failing to disgorge the money that State Farm wrongfully received in the approximate amount of $5,500 from the liability carrier for the at-fault party when Plaintiff clearly had the right to those proceeds toward being made whole, in failing to pay the balance of the unpaid $25,000 in available medical payments coverage and in failing to pay the $75,000 in available underinsured motorist benefits.

54. As a direct result of the bad faith handling of the subject case by Defendant, Plaintiff, has been deprived of benefits to which she is entitled under the subject policy.

55. As a direct result of the bad faith conduct of the Defendant, Plaintiff, has suffered severe anguish, distress and frustration.

56. The bad faith actions and inactions of the Defendant, occurred with reckless indifference to the harm which was reasonably certain to result to the insured, Plaintiff.

57. The bad faith actions of the Defendant, have occurred with indifference toward the insured, Plaintiff, and with an attempt to reduce costs for the defendant insurance companies for the profit and benefit of the insurance company consistent with a pattern and practice exercised by this insurance company in a bad faith system of handling claims.

**WHEREFORE**, Plaintiff, Lauren Diers demands compensatory damages against Defendant, State Farm pursuant to Plaintiff's contract of insurance in the amount of $100,000.00, compensatory damages for State Farm's bad faith handling of the subject case in the amount of $350,000, punitive damages in the amount of $500,000.00, attorney fees, pre-judgment interest on Plaintiff's contract damages, post-judgement interest on all damages and costs of this action.

Respectfully submitted,

**DYER, GAROFALO, MANN & SCHULTZ**

/s/ John A. Smalley

John A. Smalley (0029540)
Attorney for Plaintiff
131 N. Ludlow Street, Suite 1400
Dayton, Ohio 45402
(937)223-8888
Fax # (937) 824-8630
jsmalley@dgmslaw.com

## JURY DEMAND

Now comes Plaintiff, by and through counsel, and hereby demands a trial by jury on all issues of this matter.

/s/ John A. Smalley

John A. Smalley (0029540)